UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LUIS ORTIZ-CORREA,

                              Petitioner,

        v.

UNITED STATES OF AMERICA,

                              Respondent.

No. 20-CV-11056 (KMK)

UNITED STATES OF AMERICA

        v.

LUIS ORTIZ-CORREA,

                              Defendant.

No. 17-CR-737 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Howard E. Tanner, Esq.
Tanner & Ortega LLP
White Plains, NY
*Counsel for Petitioner*

Christopher J. Clore, Esq.
United States Attorney's Office
New York, NY
*Counsel for Respondent*

KENNETH M. KARAS, United States District Judge:

        Luis Ortiz-Correa ("Petitioner") has filed a Petition for a Writ of Habeas Corpus (the

"Petition") pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his May 1, 2018 sentence

of 77 months' imprisonment, imposed after Petitioner pled guilty to one count of felon in

possession of firearms, in violation of 18 U.S.C. § 922(g)(1).  (*See generally* Pet. for Writ of

Habeas Corpus ("Pet.") (Dkt. No. 2, Case No. 20-CV-11056; Dkt. No. 32, Case No. 17-CR-

737).)[1]  For the foregoing reasons, the Petition is denied.

## I.  Background

### A.  Factual Background

On April 17, 2017, a law enforcement officer with the Mount Vernon Police Department

("MVPD") received reports about a stolen Gray 2006 Nissan Murano (the "Vehicle") that fit the

description of a vehicle used in a shooting.  (*See* Resp't's Mem. of Law in Opp'n to Pet. ("Opp'n

Mem.") 1 (Dkt. No. 34, Case No. 17-CR-737).)  MVPD subsequently initiated a stop during

which Petitioner exited the Vehicle and attempted to flee on foot, before he was apprehended and

placed under arrest.  (*See id*.)  During an inventory search of the Vehicle after the arrest, an

officer "observed in plain view two firearms behind the rear passenger seat."  (*Id*.)  MVPD

obtained a search warrant and recovered the two firearms, both of which had been reported

stolen.  (*Id*. at 1–2.)

On December 4, 2017, Petitioner waived indictment and consented to filing of a one-

count information (the "Information") charging Petitioner with one count of felon in possession

of a firearm in violation of 18 U.S.C. § 922(g)(1) and (2).  (*See* Information (Dkt. No. 16, Case

No. 17-CR-737); Waiver of Indict. (Dkt. No. 17, Case No. 17-CR-737).)  Petitioner was arrested

pursuant to the Information and presented on the same day, where he pled not guilty.  (*See* Dkt.

(entries for Dec. 4, 2017), Case No. 17-CR-737.)  On December 29, 2017, Petitioner appeared

before Magistrate Judge Judith McCarthy and pled guilty to Count One pursuant to a plea

---

[1] Certain of the Parties' papers were filed on Petitioner's criminal docket, Case No. 17-CR-737, and certain on Petitioner's civil docket, Case No. 20-CV-11056.  The docket citations indicate on which docket each document was filed.

agreement with the Government.  (*See* Opp'n Mem. 2; *see generally* Plea Tr. (Dkt. No. 41-1,

Case No. 17-CR-737).)  As relevant to the instant Petition, Judge McCarthy and Petitioner went

through several exchanges at the time of the plea, as outlined below:

> THE COURT:  So I want to go over this letter with you, Mr. Ortiz-Correa, so you
> understand it and make sure that everything's clear.  As you know, Count One of this
> felony information you're charged with being a felon in possession of a firearm in
> violation of Title 18, United States Code, Section 922(g); do you understand that?
> THE DEFENDANT:  Yes.
> THE COURT:  Okay.  If you're convicted of this charge in this felony information, either
> after trial or by plea of guilty, you would be subject to a maximum term of imprisonment
> of ten years, a maximum term of supervised release of three years, a maximum fine of
> $250,000 and a $100 mandatory special assessment; do you understand that?
> THE DEFENDANT:  Yes.
> [ . . . ]
> THE COURT:  [. . .] Mr. Clore, what are the elements of the offense and what is the
> government prepared to prove at trial to establish those elements?
> MR. CLORE:  Were this case to proceed to trial, the government would be required to
> establish beyond a reasonable doubt the following three elements:  First, that the
> defendant knowingly possessed a firearm or ammunition; Second, that the defendant's
> possession of the firearm or ammunition was in or affecting interstate commerce; and
> [t]hird, that prior to his possession of the firearm, the defendant was convicted in any
> court of a crime punishable by imprisonment for more than one year. . . . The evidence
> will further establish that on or about March 2, 2010, the defendant was convicted in
> Waterbury Criminal Court of burglary in the third degree, a felony, and was sentenced to
> a term of 15 months incarceration.
> [ . . . ]
> THE COURT:  Can you tell me in your own words what you did to commit this crime?
> THE DEFENDANT:  On April 17, 2017, I possessed two firearms; a Savage 12 gauge
> shotgun and a Hi-Point, 9 millimeter rifle.  I am a convicted felon, and I knew I was not
> allowed to possess a firearm.  I knew this was a crime and illegal.
> [ . . . ]
> THE COURT:  [ . . . ] Mr. Ortiz-Correa, when you did these acts, you did them
> knowingly and willingly; right?
> THE DEFENDANT:  Yes.
> THE COURT:  And you knew it was against the law to do what you were doing?
> THE DEFENDANT:  Yes.
> THE COURT:  And I just want – I know you said you were a convicted felon, when did
> you become a convicted felon prior to April 17, 2017?
> THE DEFENDANT:  2010.

(Plea Tr. 12:3–17, 20:16–21:4; 21:15–18; 22:15–23:9.)  This Court accepted Petitioner's plea

allocution on March 8, 2018.  (*See* Dkt. No. 20, Case No. 17-CR-737.)

On May 1, 2018, Petitioner appeared before this Court for sentencing. (*See generally* Sentencing Tr. (Dkt. No. 26, Case No. 17-CR-737).) This Court sentenced Petitioner to 77 months' imprisonment, a sentence within the applicable guidelines range of 77 to 96 months. (*See id.* at 23:18–21; Presentence Investigation Report ("PSR") ¶ 100 (Dkt. No. 21, Case No. 17-CR-737); Judg. 2 (Dkt. No. 25, Case No. 17-CR-737).) The Court also imposed three years of supervised release. (*See* Sentencing Tr. 23:18–21; Judg. 3.) Petitioner did not file a direct appeal. (*See* Opp'n Mem. 2.)

B.  Procedural History

Petitioner filed the instant Petition on December 29, 2020, seeking to vacate his sentence in light of the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019) ("*Rehaif*"). (*See generally* Pet.) On February 26, 2021, the Government filed its Opposition to the Petition. (*See* Opp'n Mem.) On May 3, 2021, Petitioner filed a Motion to Appoint Counsel in conjunction with his Petition. (*See* Mot. to Appoint Counsel (Dkt. No. 36, Case No. 17-CR-737).) The Court granted Petitioner's Motion to Appoint Counsel on October 13, 2022. (*See* Order (Dkt. No. 39, Case No. 17-CR-737; Dkt. No. 6, Case No. 20-CV-11056).) Petitioner's counsel filed a reply on December 2, 2022. (*See* Reply in Supp. of Pet. ("Reply Mem.") (Dkt. No. 41, Case No. 17-CR-737).)[2]

II.  Discussion

A.  Standard of Review

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the

---

[2]  Petitioner's counsel first filed a reply on December 1, 2022 but amended the document the following day. (*See* Dkt. No. 40, Case No. 17-CR-737.)

United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[3] "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (quoting *Ciak v. United States*, 59 F.3d 296, 301 (2d Cir. 1995)). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Machibroda v. United States*, 368 U.S. 487, 495 (1962). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a

---

[3] 28 U.S.C. § 2255(a) provides, in full:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

hearing, would entitle [the petitioner] to relief." *See Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). Finally, because Petitioner filed his initial Petition pro se, the Court construes the Petition and his other submissions "liberally and interpret[s] [the] to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (italics and citation omitted)).

B. Analysis

Petitioner argues that his conviction under 18 U.S.C. § 922(g)(1) must be vacated in light of the Supreme Court's decision in *Rehaif*, which found that a defendant must know that he possesses a firearm in addition to knowing that he belongs to a relevant category of persons barred from possessing a firearm. (*See generally* Pet.) Specifically, Petitioner argues that he did not know that he belonged to a group of people that prohibited him from possessing a firearm, and if he did know, "he would have taken it to trial and would have not pled guilty." (*See id*. at 4.) The Government argues in opposition that Petitioner is procedurally defaulted from making this claim because "he never raised a claim that the indictment or guilty plea were defective after he was indicted, after he pleaded guilty, or in a direct appeal." (Opp'n Mem. 4.) In the alternative, the Government argues that Petitioner cannot demonstrate any prejudice from his *Rehaif* claim. (*Id*. at 5.) The Court agrees with the Government, finding that Petitioner is procedurally defaulted from raising this collateral challenge, and a hearing on the instant Motion is not warranted.

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). "An exception applies, however, if the defendant establishes (1) cause for the

procedural default and ensuing prejudice or (2) actual innocence." *Id.*; *see also Bousley v. U.S.*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" (citations omitted)).

Here, Petitioner does not dispute that he did not directly appeal his conviction. (*See generally* Pet.) Moreover, Petitioner does not argue that he is "actually innocent." (*See* Reply Mem. 3.) Instead, Petitioner argues that he has demonstrated cause and actual prejudice to overcome the procedural default. (*Id.*) "In order to demonstrate cause, a defendant must show 'some objective factor external to the defense,' such that the claim was 'so novel that its legal basis [was] not reasonably available to counsel.'" *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (first quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986); then quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984))). However, novelty or futility "cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Id.* at 84–85 (quoting *Bousley*, 523 U.S. at 623). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Id.* at 85 (quoting *Thorn*, 659 F.3d at 233).

Here, the Petitioner has sufficiently demonstrated cause for his failure to raise this claim on direct appeal. "Cause exists when the Supreme Court 'overturn[s] a longstanding and widespread practice to which th[e] Court ha[d] not spoken, but which a near-unanimous body of lower court authority had expressly approved.'" *Rodriguez v. United States*, No. 16-CR-7, 2021 WL 4065527, at *2 (S.D.N.Y. Sept. 7, 2021) (quoting *Reed*, 468 U.S. at 17). Prior to *Rehaif,* "a conviction under 922(g) did not require that the defendant knew he belonged to one of the

prohibited classes when he knowingly possessed the firearm or ammunition." *United States v. Bryant*, 976 F.3d 165, 172 (2d Cir. 2020). "However, in June 2019—after [Petitioner had pleaded guilty and was sentenced]—the Supreme Court changed the legal landscape." *Id*. Despite this, the Government argues that "[t]he question presented in [*Rehaif*] was litigated in the courts of appeals over the last three decades, and as such, the defendant cannot show cause excusing his default." (Opp'n Mem. 5.)  Indeed, several district courts have found as such stating that the "issue decided in *Rehaif* was percolating in the courts for years." *United States v. Bryant*, No. 11-CR-765, 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020); *see also Waring v. United States*, No. 17-CR-50, 2020 WL 898176, at *2 (S.D.N.Y. Feb. 25, 2020) (citing *Bryant* for a similar proposition); *United States v. Simmons*, No. 08-CR-1280, 2020 WL 6381805, at *3 & n.4 (S.D.N.Y. Oct. 29, 2020) (collecting cases).  However, the Court is more persuaded by another line of cases that holds to the contrary.  As discussed in *Rodriguez*, the other line of cases failed to consider Justice Alito's dissent in *Rehaif*, which stated that the Supreme Court's decision in *Rehaif* "overturn[ed] the long-established interpretation of an important criminal statute, . . . an interpretation that has been adopted by every single Court of Appeals to address the question." *Rehaif*, 139 S.Ct. at 2201 (Alito J., dissenting); *see also Rodriguez*, 2021 WL 4065527, at *2; *Rosario Figueroa v. United States*, No. 16-CV-4469, 2020 WL 2192536, at *5 (S.D.N.Y. May 6, 2020) (finding that a petitioner "sufficiently demonstrated cause for his failure to raise the claim on direct appeal" because *Rehaif* overturned a widely-settled interpretation of § 922(g)).

However, Petitioner has not demonstrated actual prejudice sufficient to excuse the procedural default.  To establish prejudice, a petitioner "must establish . . . that the errors worked to his actual and substantial disadvantage, infecting his entire [proceeding] with error of

constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (quotation marks omitted); *see also Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) ("The 'prejudice' requirement is met by establishing actual prejudice resulting from the errors of which [the petitioner] complains." (quotation marks omitted)).  In other words, the prejudice that must be shown is "not merely whether the instruction is undesirable, erroneous, or even universally condemned, but rather whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Gupta*, 913 F.3d at 85 (citations and quotation marks omitted).  Specifically, in the context of a plea, a petitioner must demonstrate that "he was prejudiced by the violation because he did not understand the consequences of his plea, or that, if he had been properly advised, he would not have pled guilty." *Lucas v. United States*, 963 F.2d 8, 13 (2d Cir. 1992); *see also United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (stating that within the context of plea proceedings, "a defendant must establish that the violation affected substantial rights and that there is a 'reasonable probability that, but for the error, he would not have entered the plea.'" (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005))).

Petitioner argues that, under *Rehaif*, the Government's failure to include the "fourth element" of § 922(g) during the plea allocution, namely that Petitioner knew that "he belonged to a certain group of people that prohibited him from possessing a firearm[,]" was prejudicial to his proceedings.  (Pet. 4.)  Specifically, Petitioner alleges that had he been advised of this fact, "he would have taken it to trial and would have not pled guilty" because he was "never told in any court that he could be charged and convicted by the Federal Government if he possessed a firearm because he was prohibited from doing so."  (*Id.*; *see also* Reply Mem. 4 (arguing that

Petitioner "was deprived of the ability to make a knowing and intelligent decision as to whether to plead guilty or go to trial").

It is undoubtedly true that, after *Rehaif*, the Government needed to prove four elements of § 922(g) at trial, including that Petitioner "knew of his restricted status" as a convicted felon. *Rosario Figueroa*, 2020 WL 2192536, at *5. In *Rehaif*, the Supreme Court clarified that, to prove a violation of Section 922(g), the prosecution must prove that the defendant knew at the time he possessed the firearm that he belonged to the relevant category of persons barred from possessing a firearm. *Rehaif*, 139 S. Ct. at 2194, 2200 (stating that "the word 'knowingly' applies both to the defendant's conduct and to the defendant's status;" therefore, "the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."). Here, the Information did not allege, nor did the Government indicate that it must prove, that Petitioner possessed a firearm *knowing* that he belonged to the relevant category of restricted persons. (*See* Information; Plea Tr. 20:16–21:4 (stating that the government "would be required to establish beyond a reasonable doubt . . . *three elements*" of a violation of § 922(g) (emphasis added).)

However, the Court finds that sufficient evidence existed at the time of Petitioner's plea to establish Petitioner's knowledge of his status as a convicted felon. First, prior to sentencing in the instant Action, Petitioner was previously convicted of three prior state felonies, including two convictions where Petitioner was sentenced to 15 months' imprisonment in each case. (*See* Opp'n Mem. 2; PSR ¶¶ 13, 32–34, 40.) As such, it is improbable that Petitioner did not know of his felon status, given his previous felony convictions. *See United States v. Walker*, 974 F.3d 193, 202–03 (2d Cir. 2020) (finding that "evidence available to the government for use at trial indicates persuasively that [the petitioner] was well aware of his status as a felon" because he

10

was "convict[ed] of at least five prior felonies" which "resulted in terms of imprisonment exceeding one year"); *United States v. Miller*, 954 F.3d 551, 559 (2d Cir. 2020) ("We acknowledge that, given the rights to appointed counsel, effective assistance of counsel, and due process, it is highly improbable that a person could be convicted of a felony without being aware that his possible sentence would exceed one year's imprisonment."); *Rosario Figueroa*, 2020 WL 2192536, at *5 (finding that a petitioner was not prejudiced "after being sentenced to seven separate sentences of imprisonment of more than one year"); *Whitley v. United States*, No. 16-CV-3548, 2020 WL 1940897, at *6 (S.D.N.Y. Apr. 22, 2020) (finding no prejudice where a petitioner had been convicted of multiple state felonies punishable by over a year).  Petitioner argues that since he only served less than "10 months in jail for any prior conviction[,] . . . there is doubt that [Petitioner] knew his status" as a convicted felon pursuant to § 922(g).  (Reply Mem. 6.)  Petitioner is right that, unlike other cases, Petitioner's "record [does not] demonstrate[] beyond shadow of doubt that the Government would have no trouble proving that [Petitioner] was aware of his restricted status had the law so required at the time of his trial."  *Whitley*, 2020 WL 1940897, at *6 (S.D.N.Y. 2020).  However, the Court does not just rely upon Petitioner's previous convictions, but instead looks to Petitioner's own statements at his plea hearing.

At Petitioner's plea hearing, Judge McCarthy asked Petitioner a series of questions that, through Petitioner's answers, establishes that he was indeed aware of his status as a felon.  First, Judge McCarthy confirmed with Petitioner that he was being charged as a felon in possession of a firearm, punishable by a maximum term of imprisonment of 10 years:

> THE COURT:  So I want to go over this letter with you, Mr. Ortiz-Correa, so you understand it and make sure that everything's clear.  As you know, Count One of this felony information you're charged with being a felon in possession of a firearm in violation of Title 18, United States Code, Section 922(g); do you understand that?
> THE DEFENDANT:  Yes.

> THE COURT:  Okay.  If you're convicted of this charge in this felony information, either after trial or by plea of guilty, you would be subject to a maximum term of imprisonment of ten years, a maximum term of supervised release of three years, a maximum fine of $250,000 and a $100 mandatory special assessment; do you understand that?
> THE DEFENDANT:  Yes.

(Plea Tr. 12:3–17.)  Next, Judge McCarthy asked Petitioner to describe, *in his own words*, the actions Petitioner took in furtherance of crime to which the Petitioner was pleading guilty:

> THE COURT:  Can you tell me in your own words what you did to commit this crime?
> THE DEFENDANT:  On April 17, 2017, I possessed two firearms; a Savage 12 gauge shotgun and a Hi-Point, 9 millimeter rifle.  *I am a convicted felon, and I knew I was not allowed to possess a firearm.*  I knew this was a crime and illegal.

(*Id*. 22:15–21 (emphasis added).)  While Petitioner unequivocally invoked his knowledge of his status as a felon here, Judge McCarthy again confirmed with Petitioner prior to accepting the plea:

> THE COURT:  [ . . . ] Mr. Ortiz-Correa, when you did these acts, you did them knowingly and willingly; right?
> THE DEFENDANT:  Yes.
> THE COURT:  And you knew it was against the law to do what you were doing?
> THE DEFENDANT:  Yes.
> THE COURT:  And I just want – I know you said you were a convicted felon, when did you become a convicted felon prior to April 17, 2017?
> THE DEFENDANT:  2010.

(*Id*. 22:25–23:9.)  Of note, Petitioner's statement in the plea hearing that he became a felon in 2010 matches the description of Petitioner's prior convictions in the Pre-Sentence Report.  (*See* PSR ¶¶ 13, 32–34, 40; Opp'n Mem. 2.)  Given these statements, it is hard for the Court to see how Petitioner was prejudiced "because he did not understand the consequences of his plea" or otherwise would not have pled guilty.  *Lucas*, 963 F.2d at 13.  Instead, Petitioner seemed well aware of his status as a convicted felon, and also "knew [he] was not allowed to possess a firearm."  (Plea Tr. 22:17–21.)  As such, Petitioner has not shown that he was actually prejudiced to overcome procedural default.  *See Rosario Figueroa*, 2020 WL 2192536, at *6

(collecting cases); *Bryant*, 2020 WL 353424, at *4 (noting that courts "have uniformly held that the failure to advise the defendant at his plea, or to instruct a jury, that the government had to prove knowledge of status [is] *not* plain error where, as here, the record contains facts sufficient to satisfy that element").

Even if Petitioner could proceed to the merits of his *Rehaif* claim, the Court is again skeptical that he has alleged enough to vacate his plea or sentence.  The Second Circuit has previously held that plain error review applies to *Rehaif* claims where the Petitioner did not raise a *Rehaif*-type objection at the time of his plea.  *See, e.g., United States v. Balde*, 943 F.3d 73, 95 (2d Cir. 2019) ("Although [the petitioner's] objections to the validity of his plea are not waived, the fact that he did not raise those objections below is not without significance.  It is well-settled that such claims, if not waived and not jurisdictional, are reviewed according to the plain error standard.").  "Under the plain error standard, [a petitioner] must demonstrate that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the [petitioner's] substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  *Id*. at 96 (quoting *United States v. Bastian*, 770 F.3d 212, 219-20 (2d Cir. 2014) (quotation marks and alterations omitted)).

In *Balde*, the Second Circuit found that the defendant satisfied plain error and was entitled to habeas relief for several reasons, all of which are absent in Petitioner's case at bar.  *See Balde*, 943 F.3d 73.  For example, the court cited the fact that the petitioner's status in the relevant class for 922(g) was "hotly contested" in the proceedings below, unlike the record established in Petitioner's case.  *Id*. at 97.  Moreover, as relevant to the fourth factor addressing the fairness of judicial pleadings, the court cited testimony from the change of plea hearing showing that the district court cursorily discussed the elements of the plea, thereby indicating

that the defendant may not have known that his status was relevant to the offense.  *Id*. at 94.  The

relevant exchange stated:

> THE PROSECUTOR: Yes, your Honor, Count One of the indictment has four elements:
> First, that the defendant possessed a firearm or ammunition; second, that the possession
> was knowing; third, that the firearm or ammunition traveled in interstate commerce; and,
> fourth, that at the time the defendant possessed the firearm or ammunition, the defendant
> was an alien in the United States unlawfully or illegally. . . .
> THE COURT: Thank you for letting me know that. Mr. Balde, were you able to hear the
> prosecutor a moment ago?
> THE DEFENDANT: Yes, your Honor.
> THE COURT: And do you understand that if you were to go to trial, these are the
> elements that the government would have to prove against you beyond a reasonable
> doubt?
> THE DEFENDANT: Yes, your Honor.

*Id*.  In contrast, and as outlined above, Judge McCarthy directly asked Petitioner about his felon

status and Petitioner acknowledged his status in his own words.  (Plea Tr. 22:15–23:9.)  This

forecloses the possibility that Petitioner would have had a "realistic defense that he in good faith

believed" that he not was a convicted felon.  *Id*. at 97 ("We can conceive of cases in which there

would be a plausible argument that a *Rehaif* error had no impact on a defendant's conviction by a

jury, or decision to plead guilty.").

   In sum, although Petitioner has established cause for his procedural default, he has not

shown actual prejudice.  Accordingly, Petitioner's *Rehaif* claim is dismissed as procedurally

defaulted.

III.  Conclusion

For the foregoing reasons, the Petition is dismissed with prejudice.  The Clerk of Court is respectfully directed to terminate the instant Petition and related motions, (Dkt. Nos. 32, 36, 37, Case No. 17-CR-737); enter judgment for Respondent in Case No. 20-CV-11056; close Case No. 20-CV-11056; and mail a copy of this Opinion to Plaintiff at the address listed in the docket for Case No. 20-CV-11056.

SO ORDERED.

Dated:   March 14, 2023
         White Plains, New York

_____
        KENNETH M. KARAS
      United States District Judge